# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

UNITED STATES OF AMERICA   :
:
:   CRIMINAL ACTION FILE NO.
v.               :   3:21-cr-00010-TCB-RGV
:
:
WILLIAM VINCENT       :

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant William Vincent ("Vincent") is charged in a three-count indictment with knowingly distributing at least one visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a) and (b)(1); knowingly selling, marketing, advertising, exchanging, and distributing an animal crush video, in violation of 18 U.S.C. § 48(a)(3); and knowingly possessing at least one digital storage device which contained at least one visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). [Doc. 1-1].[1] Vincent has filed a motion to suppress evidence that he

---

[1] The indictment also contains a forfeiture provision pursuant to 18 U.S.C. § 2253. [Doc. 1-1 at 3-4]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

contends was seized pursuant to an invalid search warrant, [Doc. 21], which the government opposes, [Doc. 29], and Vincent has filed a reply in support of his motion to suppress evidence, [Doc. 32].  Vincent also has filed a motion to dismiss Count 2 of the indictment, [Doc. 22], which the government opposes, [Doc. 28], and Vincent has filed a reply in support of his motion to dismiss, [Doc. 33].  For the reasons that follow, it is **RECOMMENDED** that Vincent's motion to suppress evidence, [Doc. 21], and his motion to dismiss Count 2, [Doc. 22], be **DENIED**.

## I. FACTUAL BACKGROUND

As a result of an account takeover in July 2020, an Online Covert Employee ("OCE") of the Federal Bureau of Investigation ("FBI") assumed the online identity of a subject who was sending and receiving child sexual abuse material via Telegram.[2]  [Doc. 21-1 at 7 ¶ 14].  The OCE identified a conversation in which

---

[2] These facts are drawn from the affidavit submitted in support of the search warrant at issue, see [Doc. 21-1], and according to the affidavit:

> Telegram is a cloud-based mobile and desktop instant messaging application with a focus on security that allows users to communicate by sending messages, photographs, videos, audio and files of any type.  Messages can also be sent through secret chats.  Messages sent within a secret chat can be accessed only on the device upon which the secret chat was initiated and the device upon which the secret chat was accepted.  Messages sent within secret chats can be deleted at any time and can optionally self-destruct.

[Id. at 7 n.1].

the subject had previously sent a Telegram message to "Vince Williams," stating, "Hey Perv here." [Id. (internal marks omitted)]. On August 11, 2020, while the account was under the control of the OCE, "Vince Williams" responded, "me too," and then sent the OCE the following videos:

- A 50 second video which depicts an adult, black male engaging in sex acts with a dog, including performing oral sex on the dog.

- A one minute, three second video which depicts 3 minor males and an adult male engaging in oral and manual stimulation of each other's genitals.

[Id. (internal marks omitted)]. The OCE replied, "Love the family fun!!!," and "Vince Williams" stated, "Me too, I have some infant too." [Id. at 7 ¶ 15 (alterations and internal marks omitted)]. On August 17, 2020, "Vince Williams" sent the OCE a message which stated, "One of my newest favs," and included a "6 minute, 26 second video," depicting "a post-pubescent male performing anal sex on a minor male." [Id. at 8 ¶ 16 (alteration and internal marks omitted)]. The OCE and "Vince Williams" continued communicating with each other, and on October 20, 2020, "Vince Williams" told the OCE, "I love the sadistic scream" and "I'm watching that white classic where he rapes the baby," and sent the OCE a "5 minute, 12 second video" of "an adult male perform[ing] anal sex on an infant."

[Id. at 8 ¶ 17 (internal marks omitted)].  The OCE and "Vince Williams" continued communicating, and "Vince Williams" last messaged the OCE via Telegram on October 29, 2020.  [Id. at 8 ¶ 18 (internal marks omitted)].

During the communication between the OCE and "Vince Williams" on Telegram, the OCE asked "Vince Williams" if he was ever on "NKP," [id. at 8 ¶ 19 (internal marks omitted)], an abbreviation for NastyKinkPigs.com, "a website marketed as [the] 'World's Most Extreme Fetish and Hookup Site,'" [id. at 8 n.2], and "Vince Williams" replied that he "loved NKP" and provided his NastyKinkPigs.com username as "Bincifurr," [id. at 8 ¶ 19 (internal marks omitted)].  A review of the "'Bincifurr' NKP profile" identified images that were similar in appearance to the original video sent to the OCE in which "an adult, black male performs oral sex on a dog."  [Id. at 8 ¶ 20].  A subpoena seeking information about the "'Bincifurr' account" at NastyKinkPigs.com revealed an email address that was subsequently connected to an address in Peachtree City, Georgia, through subpoenas served on Google and T-Mobile.  [Id. at 8-9 ¶¶ 21-24].

A search of open-source media identified a Facebook profile under the name "Will Vincent" with a profile picture similar in appearance to the adult, black male who appeared in the video with the dog that was sent to the OCE and the profile picture for the NKP account.  [Id. at 9 ¶ 25].  A subsequent search of law

4

enforcement databases for "Will Vincent" in Peachtree City, Georgia, identified an individual by the defendant's name, William Vincent, who had a Texas driver's license, and a photograph of this individual obtained from the Texas Department of Motor Vehicles ("Texas DMV") was similar in appearance to the Facebook and NKP profiles under investigation. [Id. at 9-10 ¶¶ 26-28]. A search of the Facebook profile of "William Austin Vincent" on April 16, 2021, revealed a post from March 26, 2021, in which he stated that he started a new job near Panasonic Drive in Peachtree City, Georgia. [Id. at 10 ¶ 29].

On April 27, 2021, surveillance was conducted at 640 Tulip Poplar Drive, Peachtree City, Georgia, the address identified through the subpoenas served on Google and T-Mobile based on information obtained from NastyKinkPigs.com through the subpoena for information about the "Bincifurr" account. [Id. at 8-9 ¶¶ 21-24, 10 ¶ 30]. The address was a residence, where agents observed a vehicle parked in the driveway that was registered to G.C., an individual listed as an emergency contact for defendant Vincent in the Texas DMV records. [Id. at 10 ¶¶ 27, 30]. Agents conducting surveillance at the residence observed a female walking a dog back to the residence, and the dog appeared to be similar in appearance to the dog that appeared in the video sent to the OCE. [Id. at 10 ¶ 30].

At approximately 5:30 p.m. on April 27, 2021, the OCE located a profile on Grindr,[3] with the username "vincerberus," and the profile picture for this account was similar in appearance to the other images of Vincent obtained during the investigation. [Id. at 10 ¶ 31 (internal marks omitted)]. The OCE engaged in communication with the Grindr user who told the OCE that he was at work and would be getting off work at 11:30 p.m. [Id. at 10 ¶ 31]. The Grindr user further provided his location at the time to the OCE, which was near Panasonic Drive in Peachtree City, Georgia, and he told the OCE that he did not have a car and would not be able to "host" or have a guest at his house. [Id. (internal marks omitted)]. At approximately 11:50 p.m. on April 27, 2021, agents conducting surveillance at the 640 Tulip Poplar Drive residence observed a male, similar in appearance to Vincent, and a female arrive at the residence in the vehicle registered to G.C. [Id. at 11 ¶ 32].

On April 30, 2021, FBI Special Agent Johanna Norman ("Agent Norman") submitted an affidavit in support of an application for a search warrant for the residence at 640 Tulip Poplar Drive, Peachtree City, Georgia, [Doc. 21-1], in which she relayed the details of the investigation, [id. at 7-11], as summarized herein, and

---

[3] According to the affidavit, "Grindr is a location-based social networking and online dating application for gay, bi[sexual], trans[gender], and queer people." [Doc. 21-1 at 10 n.3].

6

included information about the behavioral characteristics of child pornography

collectors based on her training and experience as an investigator of child

exploitation crimes, [id. at 3-4].  Specifically, Agent Norman averred that she had

learned from her own training and experience and from experts in the field that

persons with a sexual interest in minors:

A.  Commonly collect sexually explicit or suggestive materials consisting of photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media depicting minors in sexually suggestive and/or explicit poses that they use for their own sexual arousal and gratification.

B.  Rarely dispose of their collection of sexually explicit material involving minors, given the difficulties and risks inherent in acquiring the collection, and the unique and powerful stimulative value of the collection.

C.  Prefer minors of a particular gender and/or age.

D.  Collect or maintain collections of books, magazines, newspaper, or other writings concerning sexual activities of and with minors.

E.  Often keep the names, addresses, phone numbers or other identifying information of minors with whom they have been sexually involved or with whom they desire to be involved.

F.  Often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer, smartphone, or memory device.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

G.    May correspond with and/or meet others to share information
and materials relating to their sexual interest in children; rarely
destroy correspondence from other child pornography
distributors/ collectors; conceal such correspondence as they do
their sexually explicit material; and often maintain lists of
names, addresses, and telephone numbers of individuals with
whom they have been in contact and who share the same
interests in child pornography.

H.    Prefer not to be without their child pornography for any
prolonged time period. This behavior has been documented by
law enforcement officers involved in the investigation of child
pornography throughout the world.

I.    Child pornography that is produced and not previously
circulated has a higher "value" to a possessor due to its
originality and is often kept by the producer for long periods of
time on their personal computers, smart phones, or memory
devices.

J.    Certain groups operating on the Internet that engage in the
exchange of child pornography require users to submit original,
produced child pornography to gain access to and membership
in the group.  Members keep their collection of images depicting
the sexual abuse of children close at hand in their home
computers, smart phones, or memory devices.

[Id. at 3-4 ¶ 5].

Agent Norman also included in her affidavit information about the use of

computers in connection with the production, communication, distribution, and

storage of child pornography.  [Id. at 4-7 ¶¶ 6-12].  In addition to discussing how

computers and media storage devices are used for the distribution, receipt, and

collection of child pornography, [id. at 4-6 ¶¶ 7-9], Agent Norman explained that

8

"[t]he Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion," [id. at 6 ¶ 10], and described the use of online resources as well:

> Individuals also use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

[Id. at 6 ¶ 11].  Based on the facts set forth in her affidavit, Agent Norman asserted that there was probable cause to search the residence located at 640 Tulip Poplar Drive, Peachtree City, Georgia ("the residence"), for certain property, information, and data constituting "evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of [18 U.S.C. §§] 48, 2252 and 2252A." [Id. at 1].

On April 30, 2021, the Honorable Catherine M. Salinas, United States Magistrate Judge, issued a search warrant for the residence, authorizing the seizure of the following items:

> 1. Computers, computer hardware, computer software, computer related documentation, computer passwords and data security

devices, videotapes, video recording devices, video recording players, cameras, film, cellular telephones or other video display and storage devices that can access, record, store, and/or display images or videos of child pornography or child erotica or information pertaining to an interest in child pornography or sexual activity with minors and/or animal crush videos.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, peer-to-peer software.

3. In any format and medium, all originals, computer files, copies, and negatives of child pornography, child erotica, and animal crush videos.

4. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography or other activities involving the sexual exploitation of children and animal crush videos.

5. Any and all diaries, address books, or other lists of names and addresses of individuals who may have been contacted by an occupant of [the residence], by use of the computer or by other means, for the purpose of distributing or receiving child pornography or animal crush videos or otherwise engaging in the sexual exploitation of children.

6. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that pertain to:

   (a) accounts with an Internet Service Provider;

(b) online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage; or

(c) occupancy or ownership of the [] [residence] described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

[Id. at 15-19].

Vincent moves to suppress the evidence seized from the residence pursuant to the search warrant issued by Magistrate Judge Salinas, [Doc. 21], arguing that Agent Norman's affidavit failed "to establish probable cause to believe that evidence would be found at the residence," [id. at 2].  Vincent also moves to dismiss Count 2 of the indictment, [Doc. 22], contending that it fails to state an offense, and alternatively, that the statute under which he is charged, 18 U.S.C. § 48, as applied, is void for vagueness because it does not give fair warning that it applies to videos depicting non-forcible sex acts with animals, [id. at 1].  The government opposes both motions, [Docs. 28 & 29], and Vincent has filed replies in support of his respective motions, [Docs. 32 & 33].  Vincent's motions are due to be denied for the reasons that follow.

## II.  DISCUSSION

**A.  <u>Motion to Suppress Evidence, [Doc. 21]</u>**

Vincent moves to suppress evidence seized from his residence pursuant to the search warrant issued by Magistrate Judge Salinas, [Doc. 21], arguing that Agent Norman's affidavit failed "to establish probable cause to believe that evidence would be found at the residence," [<u>id.</u> at 2], because "the warrant application contained no facts connecting the suspected distribution of child pornography by [] Vincent to his residence" as "the only IP address discovered belonged to a mobile device serviced by T-Mobile," and there was no evidence indicating that Vincent "used or owned a desktop computer, peripherals, or external or removable digital storage media," since "the investigation was consistent with [] Vincent exclusively using a phone to access the internet, and storing and distributing child pornography only on his phone or phone-accessible cloud services," [<u>id.</u> at 6-7]. Vincent also contends that the information in the affidavit regarding his communication with the OCE from six months earlier was stale, [<u>id.</u> at 8-10], and that the good faith exception to the exclusionary rule does not apply because it was "'entirely unreasonable' for the affiant to believe that the affidavit established probable cause, or therefore to rely on the magistrate[ judge]'s issuance of the warrant," [<u>id.</u> at 13], since "[t]he '[b]ehavioral characteristics of

child pornography collectors' section of the affidavit (¶ 5) is nothing more than a series of 'conclusory allegations,' with no basis in facts relating to [] Vincent," [id. at 11 (citation omitted)], and the assertions "are outdated[ and] rendered inaccurate by developments in mobile applications and the consequent habits of consumers of child pornography," [id. at 12].

The government opposes the motion to suppress, arguing that Vincent "has offered no proof whatsoever to establish standing to contest the search warrant at issue," [Doc. 29 at 3], and that even if he had alleged standing sufficiently, his motion should be denied because he "fails to demonstrate that Magistrate Judge Salinas made an improper probable cause determination or that the information in [] Agent Norman's affidavit was stale," [id. at 4]. The government further contends that, even if Agent Norman's affidavit did not support the probable cause determination, the agents who search the residence "reasonably relied upon the facially valid search warrant." [Id. at 14]. In his reply, Vincent points out that he "alleged in his motion that the items he seeks to suppress were taken from his residence," [Doc. 32 at 1 (citation omitted)], and if the Court is not persuaded that he has standing, he requests a hearing at which to present further evidence on this point, [id. at 3]. He also reiterates his arguments that the affidavit failed to establish probable cause that evidence would be found in his residence, that the

information included in the affidavit was stale, and that the good faith exception to the exclusionary rule does not apply because there was no nexus between the criminal activity and his residence.  [Id. at 3-11].

As an initial matter, the Court finds that Vincent has adequately demonstrated his standing to challenge the search by explicitly alleging in his motion that the warrant was executed at "Vincent's residence in Peachtree City," [Doc. 21 at 1], and by moving specifically "to suppress all evidence seized from his residence," [id. at 2], as "[i]t appears that under Eleventh Circuit case law, a defendant may establish standing through allegations from his attorney," United States v. McCullough, Criminal Indictment No. 1:11–CR–136–JEC/AJB, 2011 WL 12452632, at *25 n.21 (N.D. Ga. Aug. 29, 2011) (citation omitted), adopted in part, rejected in part on other grounds by 2014 WL 3955556, at *2 (N.D. Ga. Aug. 13, 2014); see also United States v. Moncur, No. 10-20801-CR, 2011 WL 3844096, at *4–6 (S.D. Fla. July 28, 2011) (citation omitted) (finding that defendant adequately demonstrated standing where he "allege[d] in his motion to suppress that his property, including the Kyocera and Huawie cell phones, were improperly searched and seized"), adopted by 2011 WL 3844093, at *1 (S.D. Fla. Aug. 29, 2011). Thus, this is not a case where Vincent is relying exclusively on the government's filings or theory of the case to establish standing, since he has specifically alleged

in a pleading signed by his attorney that "his residence" was searched.  <u>See</u> <u>McCullough</u>, 2011 WL 12452632, at *25 n.21; <u>Moncur</u>, 2011 WL 3844096, at *4–6; [Doc. 32 at 1 (citation omitted)].  Moreover, there does not appear to be any genuine dispute about whether it was Vincent's residence that was searched pursuant to the search warrant at issue, and where, as here, "a Fourth Amendment challenge is subject to rejection on other grounds, courts routinely assume standing and reach the substantive challenge."  <u>United States v. Bowers</u>, CR 18-292, 2021 WL 2843173, at *1 n.2 (W.D. Pa. July 8, 2021); <u>see also</u> <u>United States v. Varlack Ventures, Inc.</u>, 149 F.3d 212, 215 (3d Cir. 1998) (resolving substantive Fourth Amendment issues first and finding that because the government had reasonable suspicion to search, there was no need for the Court to discuss whether defendant had standing to challenge the search in question); <u>United States v. Wilburn</u>, 2:18-cr-115, 2021 WL 1310423, at *15 (W.D. Pa. Apr. 8, 2021) (citations and internal marks omitted) ("Fourth Amendment standing is not a threshold issue that must be proven and resolved before any substantive suppression proceedings may occur," since "Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim").

15

Vincent acknowledges that the affidavit established probable cause to believe that he "used certain online accounts to distribute child pornography, and also that he lived at the residence," [Doc. 21 at 2, 7], but he contends that the affidavit failed "to establish probable cause to believe that evidence would be found at the residence," [id. at 2]. In particular, Vincent asserts that a common investigative course in child pornography cases "is that law enforcement traces child porn distribution or receipt to a particular IP address, and then obtains account information from an internet service provider, including the subscriber's address," and "[s]uch evidence usually establishes probable cause to believe that the child porn passed through a router located in the house," but here, "no such investigation occurred." [Id. at 7]. Instead, "the only IP address discovered belonged to a mobile device serviced by T-Mobile," and there was no evidence indicating that Vincent "used or owned a desktop computer, peripherals, or external or removable digital storage media," since "the investigation was consistent with [] Vincent exclusively using a phone to access the internet, and storing and distributing child pornography only on his phone or phone-accessible cloud services," [id.]. Vincent asserts that "advances in mobile technology have changed the habits of consumers of child pornography, many of whom are not 'collectors' at all," [Doc. 32 at 4], and therefore, "the Court should not take at face

value these hoary law enforcement memes about 'characteristics of child pornography collectors,' which have been cut and pasted into search-warrant affidavits for decades without regard for evolving technology and practice," [id.]. Consequently, Vincent contends that the affidavit failed to establish the requisite nexus between the criminal activity under investigation and his residence to support issuance of the search warrant.  [Id. at 3-7].  The Court is unpersuaded by Vincent's arguments that Agent Norman's affidavit failed to establish probable cause to support issuance of the search warrant for his residence.

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 558 (1978)); see also United States v. Cadet, Criminal Action Nos. 1:11-CR-00522-WBH-LTW, 1:11-CR-00113-WBH-LTW, 2013 WL 504892, at *4 (N.D. Ga. Jan. 16, 2013) (citation omitted), adopted by 2013 WL 504815, at *1 (N.D. Ga. Feb. 8, 2013), aff'd, 574 F. App'x 917 (11th Cir. 2014) (per curiam) (unpublished).  That is, "[p]robable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (citation and internal marks omitted).  "Probable

17

cause deals 'with probabilities[, which are] . . . . the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 241 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also United States v. Spann, No. 15–20070, 2015 WL 1969111, at *3 (S.D. Fla. May 1, 2015) (citation omitted), aff'd, 649 F. App'x 714 (11th Cir. 2016) (per curiam) (unpublished).[4]

The Eleventh Circuit has explained the Court's review of the sufficiency of a search warrant as follows:

When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions. In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference. In recognition of the

---

[4] "[T]he term probable cause, . . . means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion." New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986) (alterations in original) (citations and internal marks omitted). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." Id. (citation and internal marks omitted). That is, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," Gates, 462 U.S. at 232, and "[c]ertainty has no part in a probable cause analysis," United States v. Frechette, 583 F.3d 374, 380 (6th Cir. 2009) (citation omitted).

difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner[.]" Id. at 1361 (citation omitted). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id. (citation omitted); see also United States v. McCullough, Criminal Indictment No. 1:11–CR–136–JEC/AJB–01, 2012 WL 11799871, at *13 (N.D. Ga. Oct. 9, 2012) (citations omitted), adopted by 2014 WL 3955556, at *2 (N.D. Ga. Aug. 13, 2014). Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams v. Williams, 407 U.S. 143, 149 (1972) (citation omitted). The burden of establishing that a search warrant is defective is upon Vincent, United States v. Lockett, 533 F. App'x 957 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted) ("When a search is conducted pursuant to a warrant, the burden is on the defendant to show that the warrant is invalid."); see also Franks v. Delaware, 438 U.S. 154, 171 (1978), and the Court's consideration of

19

Vincent's facial challenge to the search warrant is confined to the four corners of the search warrant affidavit, see United States v. Schulz, 486 F. App'x 838, 841 (11th Cir. 2012) (unpublished) (per curiam) (citation omitted); Donovan v. Mosher Steel Co., Div. of Trinity Indus., 791 F.2d 1535, 1537 (11th Cir. 1986) (citation and internal marks omitted) ("[I]t is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention — that is, within the four corners of the warrant application.").

Contrary to Vincent's contentions, Agent Norman's affidavit provided sufficient facts to establish probable cause to believe that evidence involving the possession of child pornography and animal crushing would be found in his residence.  As Vincent concedes for purposes of his motion, [Doc. 21 at 2, 7], Agent Norman described the evidence developed during the investigation that established probable cause that Vincent possessed and distributed child pornography during his online communications with the OCE, see [Doc. 21-1 at 7-8 ¶¶ 14-20].  The affidavit also presented facts that connected Vincent to the residence where the search warrant was executed, including evidence that the dog depicted in the first video that Vincent sent to the OCE had been observed at the residence.  [Id. at 7-11 ¶¶ 14, 21-30].  Agent Norman further provided information regarding her training and experience with child pornography investigations and

detailed specific characteristics typically associated with individuals who have "a sexual interest in minors."  [Id. at 3-4 ¶ 5].  Specifically, Agent Norman explained that such individuals commonly collect sexually explicit material involving minors and rarely dispose of their collection and often "maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer, smartphone, or memory device," and "usually at the collector's residence, to enable the individual to view the collection, which is valued highly."  [Id. at 3 ¶ 5].

Thus, notwithstanding Vincent's arguments about advancements in mobile technology and evidence of his alleged storing and distributing of child pornography only on his phone or phone-accessible cloud services, see [Doc. 21 at 7], the facts in the affidavit established probable cause to believe that Vincent possessed multiple videos depicting child pornography, [Doc. 21-1 at 7-8 ¶¶ 14-20], and Agent Norman's training and experience, including information she learned from experts in the field, regarding the behavioral characteristics of persons with "a sexual interest in minors," [id. at 3 ¶ 5], provided adequate support for Magistrate Judge Salinas' finding that the affidavit established probable cause to search Vincent's residence, see United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005) (citation omitted) (holding that the affidavit's

21

statement that "possessors of child pornography often obtain and retain images of child pornography on their computers," along with other facts, was "more than enough to support" probable cause); United States v. Hay, 231 F.3d 630, 636 (9th Cir. 2000) (reasoning that the collector profile "form[ed] the basis upon which the magistrate judge could plausibly conclude that those files were still on the premises"); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (footnote and citation omitted) (finding the affidavit provided probable cause that items sought were in defendant's apartment where affiant explained that "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes"); United States v. Potts, 559 F. Supp. 2d 1162, 1172 (D. Kan. 2008) (footnote omitted) (finding sufficient nexus to residence and stating that "[c]rimes involving child pornography are often tied to a secure place, like a private residence"); United States v. Schwinn, No. 2:07-cr-119-FtM-29SPC, 2008 WL 782520, at *3 (M.D. Fla. Mar. 21, 2008) (finding that the totality of the circumstances allowed the magistrate judge to conclude that there was a fair probability that child pornography was in the defendant's apartment as of the date of the issuance of the search warrant), aff'd, 376 F. App'x 974 (11th Cir. 2010) (per curiam) (unpublished); United States v. Johnson, Criminal No. 07-408

(DWF/SRN), 2008 WL 465258, at *2 (D. Minn. Feb. 15, 2008) (concluding that probable cause was established for search of defendant's computers and other media located in his residence where affidavit relayed the investigation in detail, including the investigation by other agents, that at least 19 images of child pornography had been downloaded to IP addresses registered to defendant); United States v. Cox, 190 F. Supp. 2d 330, 333 (N.D.N.Y. 2002) (citations omitted) (noting the "observation that images of child pornography are likely to be hoarded by persons interested in [such] material [i]n the privacy of their homes is supported by common sense and the cases"). In short, the affidavit included sufficient information to establish probable cause to believe that Vincent was in possession of child pornography in violation of 18 U.S.C. §§ 2252 and 2252A, and that evidence of these offenses, as well as evidence of violation of 18 U.S.C. § 48, would be located in his residence. Therefore, Vincent's contention that Agent Norman's affidavit did not establish probable cause to search his residence is without merit.

Vincent next argues that Agent Norman's affidavit failed to establish probable cause that evidence of child pornography would be found in his residence because the information in the affidavit was stale since the last video he sent to the OCE was over six months before the search warrant was issued, [Doc.

21 at 8], and "the affidavit relied on generic assertions about consumers of child pornography, which boil down to saying that they never get rid of it, and thus that evidence that existed at any time in the past will be available at any time in the future when investigators might get around to applying for a search warrant," [id. at 9 (emphasis omitted)].   Contrary to Vincent's contention, [Id. at 8-10], the information provided in Agent Norman's affidavit was not stale, see [Doc. 21-1].

"For probable cause to exist . . ., the information supporting [] the government's application for a search warrant must be timely, for probable cause must exist when the [] judge issues the search warrant."  United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) (citations omitted); see also United States v. Sanders, No. 1:12-cr-373-WSD-ECS, 2013 WL 3938518, at *2 (N.D. Ga. July 30, 2013) (citations omitted); United States v. Bushay, 859 F. Supp. 2d 1335, 1378 (N.D. Ga. 2012) (citations omitted), adopted at 1355.  "There is no particular rule or time limit for when information becomes stale."  United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000) (citations omitted).  Instead, "[t]o evaluate staleness claims, [the Court] look[s] at the unique facts of each case and may consider the maturity of the information, the nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched."  United States v. Deering, 296 F. App'x

894, 898 (11th Cir. 2008) (per curiam) (unpublished) (citation and internal marks omitted); see also United States v. Rojas-Coyotl, Criminal Action No. 1:13-cr-0128-AT-AJB, 2014 WL 1908674, at *5 (N.D. Ga. May 13, 2014) (citation omitted), adopted at *1.

In United States v. Touset, 890 F.3d 1227, 1238 (11th Cir. 2018), the Eleventh Circuit held that evidence which "suggested that [the defendant] likely received child pornography electronically and had child pornography stored on his electronic devices" was not stale after "a year and a half," reasoning that those who use child pornography "rarely, if ever, dispose of [ it]," and that "probable cause of involvement in *electronic* child pornography remains even longer because deleted files can remain on electronic devices," and "information that a person received electronic images of child pornography is less likely than information about drugs, for example, to go stale because the electronic images are not subject to spoilage or consumption," id. (citations and internal marks omitted).  Thus, because this case involves the electronic distribution of child pornography via a social media site, "the question of staleness [in this context] is unique," United States v. Henry, Criminal Case No. 1:13-CR-0049-SCJ, 2013 WL 3064178, at *2 (N.D. Ga. June 18, 2013) (citations and internal marks omitted); see also United States v. Toups, No. 2:06-cr-112-MEF, 2007 WL 433562, at *4 (M.D. Ala. Feb. 6, 2007) ("[T]he

staleness calculation is unique when it comes to cases of internet child pornography [because] the images and videos stored on a computer are not easily eliminated from a computer's hard drive."), and the Court is persuaded that the affidavit supplied ample evidence to "overcome any issue of staleness," Cano v. Sec'y, Dep't of Corr., Case No. 8:17-cv-2436-T-60JSS, 2020 WL 6134225, at *12 (M.D. Fla. Oct. 19, 2020); see also United States v. Schwinn, 376 F. App'x 974, 979 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted) (affirming that ten-month-old information about child pornography was not stale); United States v. Carroll, 750 F.3d 700, 704 (7th Cir. 2014) (affirming that evidence of a defendant molesting and photographing a child was not stale, despite a five-year gap between when the child pornography victim was molested and photographed and the issuance of search warrant for the defendant's computer, because those who collect such images rarely dispose of their collections); United States v. Giddens, CIVIL ACTION NO.: 4:19-cr-111, 2019 WL 6971496, at *3 (S.D. Ga. Dec. 18, 2019) (citations omitted) ("The approximately nine-month period at issue here, given the nature of child pornography, is simply not sufficient to make the information stale."); United States v. Frank, No. 09-CR-20075, 2009 WL 2430909, at *7 (S.D. Fla. Aug. 7, 2009) (finding that one-year-old information was not stale).  In short, "the nature of the criminal activity being investigated supported a finding of timeliness,"

United States v. Kellogg, Criminal Action No. 1:12–CR–383–1–CAP, 2013 WL 3991956, at *16 (N.D. Ga. Aug. 1, 2013), and therefore, Vincent's staleness argument is without merit.

Even if Agent Norman's affidavit had failed to establish probable cause to support the search warrant, the government contends that Vincent's motion to suppress should still be denied because the agents who searched the residence relied in good faith on the search warrant.  [Doc. 29 at 14-15].  Under United States v. Leon, 468 U.S. 897, 919-21 (1984), "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate[.]"  United States v. Sharp, Civil Action File No. 1:14–cr–229–TCB, 2015 WL 4641537, at *14 n.18 (N.D. Ga. Aug. 4, 2015) (citation and internal marks omitted), adopted at *5; see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citation omitted).

There are four situations in which the Leon good faith exception does not apply and suppression is warranted:

> (1) where the magistrate or judge in issuing a warrant was misled by
> information in an affidavit that the affiant knew was false or would
> have known was false except for his reckless disregard of the truth;
> (2) where the issuing magistrate wholly abandoned his judicial role

27

in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citation and internal marks omitted). None of the circumstances precluding the good faith exception apply here as there is no allegation that false information was included in the affidavit, and there is nothing in the record that even hints that Magistrate Judge Salinas, who reviewed the affidavit and signed the search warrant, engaged in any misconduct or abrogation of judicial responsibility, and as already discussed, the affidavit set forth sufficient probable cause, and in any event is not "so lacking . . . as to render official belief in its existence entirely unreasonable." Id. (citation and internal marks omitted). Moreover, the warrant was facially valid in that it described in sufficient detail the residence to be searched and the items to be seized and was signed by a magistrate judge. See [Doc. 21-1]; see also United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000) (citation omitted) (finding warrant "was not 'so facially deficient—*i.e.*, failing to particularize the place to be searched or the things to be seized—that the executing officers could not have reasonably

presumed it to be valid'").  Thus, the law enforcement agents executing the warrant were justified in believing in its validity, and evidence seized during the execution of the search warrant would not be subject to suppression under the good faith exception even if the warrant had not been supported by probable cause.  See Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984).  Accordingly, it is **RECOMMENDED** that Vincent's motion to suppress evidence, [Doc. 21], be **DENIED**.

**B.    Motion to Dismiss Count 2, [Doc. 22]**

Vincent moves to dismiss Count 2 of the indictment, [Doc. 22], which charges him with distribution of an animal crush video, specifically "an obscene video of a man engaging in a sexual act with a live dog," in violation of 18 U.S.C. § 48(a)(3), [Doc. 1-1 at 2].  Vincent contends that Count 2 fails to state an offense because it fails to allege that the video depicts "conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury."  [Doc. 22 at 1 (internal marks omitted) (quoting 18 U.S.C. § 48(f)(1))].  Alternatively, Vincent argues that Count 2 should be dismissed because "the statute as applied is void for vagueness, because it does not give fair warning that it applies to videos depicting non-forcible sex acts with animals."  [Id.].  The

government responds that Count 2 sufficiently alleges an offense under 18 U.S.C.

§ 48(a)(3), [Doc. 28 at 2-9], and that the statute is not unconstitutionally vague as

applied to Vincent, [id. at 9-15].

Count 2 charges Vincent with a violation of 18 U.S.C. § 48(a)(3), which

makes it "unlawful for any person to knowingly sell, market, advertise, exchange,

or distribute an animal crush video in, or using a means or facility of, interstate or

foreign commerce." 18 U.S.C. § 48(a)(3). The statute defines "animal crush video"

as "any photograph, motion-picture film, video or digital recording, or electronic

image that-- (A) depicts animal crushing; and (B) is obscene." Id. § 48(f)(2)(A)-(B).

The statute defines "animal crushing" as:

> [A]ctual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury (as defined in section 1365 and including conduct that, if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242)[.]

Id. § 48(f)(1). "Serious bodily injury" is defined first by reference to 18 U.S.C. §

1365, which states:

> (3) the term "serious bodily injury" means bodily injury which involves--
>
> > (A) a substantial risk of death;
> > (B) extreme physical pain;
> > (C) protracted and obvious disfigurement; or

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty; and

(4) the term "bodily injury" means--

(A) a cut, abrasion, bruise, burn, or disfigurement;
(B) physical pain;
(C) illness;
(D) impairment of the function of a bodily member, organ, or mental faculty; or
(E) any other injury to the body, no matter how temporary.

Id. § 1365(h) (emphasis omitted). And, the statute further delineates "serious bodily injury" as "including conduct that, if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242," id. § 48(f)(1), which prohibit aggravated sexual abuse and sexual abuse, respectively, id. §§ 2241, 2242.

Vincent argues that Count 2 fails to allege a crime because it does not allege serious bodily injury, as required by § 48(a)(3), and instead simply charges conduct that may violate §§ 2241 or 2242, if committed against a person, but did not result in serious bodily injury to an animal, as required by the statute. [Doc. 22 at 2-8]. The government responds that § 48(a)(3) proscribes sexual acts between persons and live animals because the words "and including" used in § 48(f)(1) mean that the statute reaches conduct that would violate §§ 2241 or 2242 even if it did not

cause an injury of the sort described in § 1365. [Doc. 28 at 5-6]. In reply, Vincent asserts that the government's reading "contradicts the plain meaning of the statute[] and several canons of legal interpretation," [Doc. 33 at 2], and "[b]y failing to allege that [ he] caused serious bodily injury, Count 2 fails to present the essential elements of the charged offense, fails to notify [ him] of the charges to be defended against, fails to provide double-jeopardy protection, and thus fails to state an offense," [id. at 6].

"Federal Rule of Criminal Procedure 7(c) governs the requirements for what must be contained in the indictment to properly charge a crime." United States v. Ressler, Criminal File No. 1:06-CR-103-1-TWT, 2007 WL 602210, at *2 (N.D. Ga. Feb. 16, 2007), adopted at *1. "Rule 7(c)(1) requires that '[t]he indictment or information [] be a plain, concise, and definite written statement of the essential facts constituting the offense charged and [] be signed by an attorney for the government.'" Id. (alterations in original) (quoting Fed. R. Crim. P. 7(c)(1)). "Rule 7(c)(1) further provides that '[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.'" Id. (alteration in original) (quoting Fed. R. Crim. P. 7(c)(1)).

"'An indictment is valid if it contains the elements of the offense intended to be charged.'"  United States v. Honeycutt, Criminal Action No. 2:12–CR–00022–RWS, 2014 WL 2003029, at *4 (N.D. Ga. May 14, 2014) (quoting United States v. Williams, 181 F. App'x 945, 949 (11th Cir. 2006) (per curiam) (unpublished)), adopted at *1.  "'In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment, and more specifically, the language used to charge the crimes.'"  Id. (emphasis omitted) (quoting United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006)); see also United States v. Kopp, Criminal Action No. 1:12–CR–0269–RWS, 2014 WL 2154199, at *4 (N.D. Ga. May 21, 2014) (alteration in original) (citation and internal marks omitted) ("It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial."), adopted at *1, aff'd, 778 F.3d 986 (11th Cir. 2015).  "'Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense.'"  United States v. Germany, 296 F. App'x 852, 862 (11th Cir. 2008) (unpublished) (quoting United States v. Poirier, 321 F.3d 1024, 1028 (11th Cir. 2003)).  The Eleventh Circuit has held that "'when analyzing challenges to the sufficiency of an indictment, courts

give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations.'" Id. (quoting Poirier, 321 F.3d at 1029). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) (citation omitted).

> Count 2 of the indictment charges:
>
> On or about August 11, 2020, in the Northern District of Georgia and elsewhere, the defendant, WILLIAM VINCENT, did knowingly sell, market, advertise, exchange, and distribute an animal crush video, that is, an obscene video of a man engaging in a sexual act with a live dog, in and using a means and facility of interstate and foreign commerce, all in violation of Title 18, United States Code, Section 48(a)(3).

[Doc. 1-1 at 2]. Thus, the indictment specifically references the statute on which the charge is based, quotes the relevant statutory language, which encompasses the elements of the offense, and specifies the conduct alleged to have violated the statute. [Id.]. Considering only the face of the indictment, as required when ruling on a motion to dismiss, Count 2 satisfies the requirements of Rule 7 and adequately informs Vincent of the conduct charged as violating § 48(a)(3). Notwithstanding the parties' competing contentions regarding the proper interpretation of the statute, Count 2, as charged, is sufficient to state a violation of § 48(a)(3). Because

there is no summary judgment procedure in criminal cases, whether the charged conduct constitutes a violation of the statute must await the presentation of evidence at the trial and no doubt will be addressed in arguments for a motion for judgment of acquittal or during the charge conference if Count 2 reaches the jury. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) (explaining that "[t]here is no summary judgment procedure in criminal cases," "[n]or do rules provide for a pre-trial determination of sufficiency of the evidence," and that the Court "is constitutionally barred from ruling on a hypothetical question" as the "sufficiency of a criminal indictment is determined from its face" and the "indictment is sufficient if it charges in the language of the statute"); United States v. Williams, CRIMINAL INDICTMENT 3:16-cr-00003-TCB-RGV, 2016 WL 10649420, at *4 (N.D. Ga. Oct. 19, 2016) (citations and internal marks omitted) (explaining that the "sufficiency of a criminal indictment is determined from its face" and "[t]here is no such thing as a motion for summary judgment in a criminal case" and finding that "the indictment adequately charge[d] the essential elements of [the crime], and the government [was] entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29"), adopted by 2017 WL 1030804, at *6 (N.D. Ga. Mar. 16, 2017).  However, at this stage of the

proceedings, Count 2 adequately charges that Vincent violated § 48(a)(3) by distributing an animal crush video, as defined in the statute.[5]

Vincent next argues that "even if the Court interpreted the statute to define the requisite 'serious bodily injury' to include *all* conduct which would be covered by [§§] 2241 and 2242 if committed against a person, the statute as applied would be void for vagueness, because it is extremely unclear what conduct would be covered." [Doc. 22 at 8-9]. Vincent posits all sorts of problems that arise from applying §§ 2241 and 2242 to non-humans, specifically dogs, [id. at 9-11], contending that it "launches one on an ill-fated journey of canine psychological interpretation," [id. at 10]. He asserts that the impossibility of answering various questions posed about a dog's capacity to understand and respond to conduct

---

[5] It is certainly conceivable that an act of sexual abuse in violation of §§ 2241 or 2242 when committed against an animal could cause "serious bodily injury," as that term is defined in § 1365, including by inflicting "a cut, abrasion, bruise, burn, or disfigurement," or "physical pain" or transmitting an "illness" that results in "protracted loss or impairment of the function of a bodily member, organ, or mental faculty" of the animal, 18 U.S.C. § 1365(h), and if the evidence at trial proves that occurred in this case, it would satisfy Vincent's reading of the statute, but the conduct depicted in the video and any consequent injury to the dog is not before the Court as evidence is not properly considered in ruling on the motion to dismiss Count 2. Alternatively, as discussed hereinafter with respect to Vincent's vagueness argument, there is a reasonable reading of the statute that does not require proof of both a violation of § 2241 or § 2242 and "serious bodily injury," as that term is defined in § 1365, but the Court need not resolve the competing statutory interpretations advanced by the parties for purposes of ruling on the present motion.

prohibited by §§ 2241 and 2242 "shows that, as applied to a dog, [§] 48 is far from clear, leaving a person 'of common intelligence' to 'necessarily guess at its meaning and differ as to its application.'"  [Id. at 11 (citation omitted)].  Vincent also cites the rule of lenity, arguing that given the ambiguity in the statutory language, "it cannot be fairly said that beyond a reasonable doubt, it is clear if or when the statute would apply to non-forcible sex acts with a dog."  [Id. at 12].  Vincent further argues that although clarity can be provided by judicial gloss on an otherwise uncertain statute, no prior judicial decision has fairly disclosed that bestiality is within the scope of conduct prohibited by § 48.  [Id. at 12-13].

The government argues that § 48 is not unconstitutionally vague as applied to Vincent because the statutory language provided fair notice that distributing a video of himself engaging in sexual acts with a live dog was unlawful, and the questions he poses about how the government would prove a violation of §§ 2241 or 2242 involving a non-human victim do not cast doubt on the meaning of § 48 but instead, "raise issues of factual sufficiency that are not appropriate for pretrial adjudication." [Doc. 28 at 12 (citations omitted)].  The government also asserts that the rule of lenity is inapplicable because "Congress unambiguously incorporated aggravated sexual abuse and sexual abuse into the definition of 'subjected to serious bodily injury' by using the words 'and including' within the definitional

parenthetical portion of [§] 48(f)(1)." [Id. at 13-14]. Finally, the government contends that "[i]nterpreting [§] 48 to proscribe sexual acts with a live, non-human animal is not a novel construction of the statute and does not violate due process," [id. at 14 (emphasis omitted)], because nothing in the statute "indicates, and no court has ever held, that creation of a video depicting sexual abuse of animals is lawful," [id.], and Vincent's argument misapprehends the novel construction principle, which is akin to an *ex post facto* law, [id.].

In reply, Vincent reiterates his arguments, asserting that "it is difficult if not impossible for an ordinary person to know what conduct committed with an animal would meet all of [§] 2241 or [§] 2242's elements," [Doc. 33 at 6], and complains that instead of answering the questions posed by application of these statutes to sexual assault of an animal, "the government tries to argue that they are only questions of factual sufficiency and how the government would prove a violation at trial," [id. at 7 (citation omitted)]. Vincent contends that "the question of what evidence would suffice to prove a violation, and the question of whether a statute gives 'fair warning' of what it takes to violate it, are overlapping if not completely congruent," [id.], and that "it is unclear what the prosecution would have to prove to show a violation in *any* case," [id.]. He also maintains that given "the ambiguities and vagaries of the statute, the rule of lenity applies to bar

prosecution of non-forcible sex acts with an animal." [Id. at 8]. Finally, he asserts that "the government cites no persuasive evidence to rebut the conclusion that application of [§] 48 to the conduct would be a novel expansion of the scope of that statute." [Id.].

"Unconstitutionally vague statutes are those which are not subject to reasonable interpretation." United States v. Nowka, No. 5:11-cr-00474-VEH-HGD, 2012 WL 2862061, at *3 (N.D. Ala. May 10, 2012) (citations omitted), adopted by 2012 WL 2862053, at *2 (N.D. Ala. July 11, 2012). "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" Allied Veterans of World, Inc.: Affiliate 67 v. Seminole Cnty., 783 F. Supp. 2d 1197, 1206 (M.D. Fla. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)), aff'd, 468 F. App'x 922 (11th Cir. 2012) (per curiam) (unpublished). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000) (citation omitted); accord United States v. Williams, 553 U.S. 285, 304 (2008). However, "[t]here is a strong presumption that statutes passed by Congress are valid," United States v. Carver, 422 F. App'x 796,

39

800 (11th Cir. 2011) (per curiam) (unpublished) (citation and internal marks omitted), and "because [Vincent's] void for vagueness challenge does not raise a First Amendment issue, it must be evaluated only as applied, in the light of the facts of the case at hand," United States v. Maughon, Criminal Action No. 1:11–CR–028–TWT–ECS, 2011 WL 3489973, at *3 (N.D. Ga. June 21, 2011) (citations omitted), adopted by 2011 WL 3489948, at *1 (N.D. Ga. Aug. 9, 2011). Furthermore, "Supreme Court precedent makes clear that courts should use the void for vagueness remedy sparingly," as "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws[.]" United States v. Gerlay, No. 3:09–cr–00085–JWS–JDR, 2009 WL 4897748, at *1 (D. Alaska Dec. 11, 2009) (footnotes and internal marks omitted).[6]

Although the statutory language at issue is not a model of clarity, the Court agrees with the government that § 48 is susceptible to a reasonable interpretation that encompasses the conduct with which Vincent is charged. In the only circuit court decision touching upon the issue presented by Vincent's motion, the Fifth

---

[6] Indeed, "[a] court may not invalidate application of a statute under the void-for-vagueness doctrine simply because there is some degree of ambiguity in the provisions of the statute," United States v. Ortiz, 738 F. Supp. 1394, 1397 (S.D. Fla. 1990), and the Supreme Court "has rarely held federal statutes to be void for vagueness," KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner, 647 F. Supp. 2d 857, 893 (N.D. Ohio 2009) (citation omitted).

Circuit summarily stated that by referencing § 2241, which criminalizes aggravated sexual abuse, and § 2242, which criminalizes sexual abuse, both of which require causing another to engage in a sexual act, "§ 48 proscribes bestiality." United States v. Richards, 755 F.3d 269, 272 n.6 (5th Cir. 2014). Although the Fifth Circuit did not further explain its interpretation of the statute on this point, and Vincent complains that it is mere dicta, [Doc. 22 at 8], the conclusion that "§ 48 proscribes bestiality" by referencing §§ 2241 and 2242 in the statutory definition of "animal crushing" represents a reasonable reading of the statute that defeats Vincent's void for vagueness argument as applied to his conduct, Richards, 755 F.3d at 272 n.6. The statute makes it adequately clear to people of ordinary intelligence that distributing a video of oneself engaging in sexual contact with a living animal that would constitute a violation of §§ 2241 or 2242 if committed against a person violates § 48. Specifically, the statute prohibits "actual conduct in which one or more living non-human mammals . . . is purposely . . . subjected to serious bodily injury (as defined in section 1365 *and including* conduct that, if committed against a person and in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242)." 18 U.S.C. § 48(a)(3) (emphasis added). The "and including" provision in the definition of "animal crushing" explicitly incorporates conduct committed against

41

a living animal that would violate §§ 2241 or 2242 if committed against a person, which supplies ample notice of the conduct proscribed by the statute.

As the government concedes, it must prove the essential elements of the crime at trial, and Vincent will have the opportunity to advance his various arguments questioning whether his conduct comes within that which is prohibited by the statute, but for purposes of the pending motion to dismiss, the Court need not address his ponderings about canine consent to sexual acts performed on a living dog, as it will be up to the jury or the trial judge on a motion for judgment of acquittal to determine whether the evidence presented is sufficient to support a finding that he violated the statute.  However, given the "strong presumption that statutes passed by Congress are valid," Carver, 422 F. App'x at 800, and the reasonable reading of the statute noted by the Fifth Circuit in Richards, which is supported by the incorporation of §§ 2241 and 2242, both of which criminalize sexual abuse by causing another to engage in a sexual act, into the statutory definition of "animal crushing," § 48 is not unconstitutionally void for vagueness as applied to Vincent.[7]  Accordingly, it is **RECOMMENDED** that Vincent's motion to dismiss Count 2, [Doc. 22], be **DENIED**.

---

[7] Vincent's reliance on the rule of lenity fares no better.  "The simple existence of some statutory ambiguity . . . is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree."  Muscarello v. United

### III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Vincent's motion to suppress evidence, [Doc. 21], and his motion to dismiss Count 2, [Doc. 22], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 3rd day of May, 2022.

Russell G. Vineyard

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

States, 524 U.S. 125, 138 (1998) (citation omitted).  Rather, "[t]o invoke the rule [of lenity], [the Court] must conclude that there is a grievous ambiguity or uncertainty in the statute" such that the Court "can make no more than a guess as to what Congress intended." Id. at 138-39 (citations and internal marks omitted).  As discussed, since § 48 is susceptible to a reasonable reading that prohibits the conduct with which Vincent is charged of engaging in a sexual act with a living animal that would constitute a violation of §§ 2241 or 2242 if committed against a person, the statute is not grievously ambiguous, and the Court need not guess at what Congress intended.  See United States v. Jackson, No. CR-09-1115 JF, 2010 WL 3325611, at *10 (N.D. Cal. Aug. 23, 2010).