IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM VINCENT,<br><br>   Defendant. | CRIMINAL ACTION FILE<br><br>NO. 3:21-cr-10-TCB |

**O R D E R**

This case comes before the Court on Magistrate Judge Russell G. Vineyard's report and recommendation [36] that recommends denying Defendant William Vincent's motions [21, 22] to suppress evidence and to dismiss Count II, respectively. Vincent has filed objections [40].

**I.   Background**

In July 2020, a FBI Online Cover Employee ("OCE") took over a Telegram account[1] of a person who sent and received child sexual abuse

---

[1] Telegram is an encrypted chat app for cellphones and computers.

material. During the account takeover, the OCE sent a message to "Vince Williams."[2]

On August 11, Vincent replied to the OCE's message and sent the OCE two videos, the first being a fifty-second video that showed a black man, with his face clearly visible, engaging in sex acts with a dog, including oral sex, and the second, a one-minute and three-second video that showed three minor boys and an adult man performing sex acts on each other.

On August 17, Vincent sent another vide to the OCE, stating that this video was one of his favorites. The six-minute and twenty-six-second video showed a post-pubescent male anally raping a boy.

During August, September, and October, the OCE and Vincent continued to communicate. On October 20, Vincent stated that he "loves the sadistic scream," and said he was "watching that white classic where he rapes the baby." [1] at 4. Without prompting, he sent a five-minute, twelve-second video that shows a man anally raping a baby.

---

[2] It is later discovered that "Vince Williams" is Vincent, the Defendant. The Court will use Vincent instead of his screen name.

During this communication, the OCE asked Vincent if he frequented NKP.[3] He said yes and provided his username.

When the FBI visited Vincent's profile on NKP, the profile had a photograph of a man who looked similar to the man in the bestiality video sent to the OCE.

The FBI subpoenaed NKP for Vincent's account. The account listed a G-mail[4] email address and location as Peachtree City, Georgia. Subsequently, the FBI subpoenaed Google for Vincent's email address. The email listed "Vince Willhelms" as the account owner, with a T-Mobile IP login address.

The FBI then subpoenaed T-Mobile for the IP login address which was the Mobile Station-ISDN number.[5]

The FBI subpoenaed Google a second time and learned Vincent's email, location, and address.

---

[3] NKP is an acronym for NastyKinkPigs.com, a website that markets to gay men "who crave hardcore sex." It allows users to upload videos, including child pornography, to the website.

[4] G-mail is a free, web-based email service provided by Google.

[5] A ISDN number is a person's phone number.

When the FBI performed an open-source media search, a Facebook profile appeared with the name "Will Vincent." The man in the profile picture resembled the man in the bestiality video and the profile picture for the NKP account. The Facebook profile also included the T-Mobile phone number.

On April 27, 2021, an FBI agent observed a woman walk a dog to and from Vincent's residence. The dog appeared to be the same dog in the video Vincent sent to the OCE. On April 30, Magistrate Judge Salinas issued a search warrant for Vincent's house. On May 6, the search warrant was executed and the FBI seized fifteen items. That day, an FBI agent saw Vincent and identified him as the black man in the bestiality video.

On May 25, the FBI reviewed a sixty-four-gigabyte memory card that was seized from Vincent's house. Four child pornography videos were discovered on the card.

On June 22, a grand jury indicted Vincent on three counts: distribution of child pornography (violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1)); distribution of an animal crush video (violation of 18 U.S.C.

§ 48(a)(3)); and possession of child pornography (violation of 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2)).

On December 1, Vincent moved to suppress the evidence obtained at his house and moved to dismiss Count II.

On May 3, 2022, Magistrate Judge Vineyard issued his R&R. Vincent objects, arguing that the search warrant affidavit did not establish probable cause to search his house and that the six-month-old evidence was stale. As to Count II, he argues that the statute under which he was charged is void for vagueness and did not put him on notice that his behavior was criminal.

## II.   Legal Standard

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C.

§ 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for "clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (quoting *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).[6]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

---

[6] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has indicated that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely reviewed both legal and factual conclusions for clear error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This standard of review is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (holding that when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a "plain error standard" while questions of law always remain subject to de novo review).

After conducting a complete and careful review of the R&R, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III. Discussion

### A.   Vincent's Motion to Suppress

Vincent makes three arguments: (1) the affidavit for the search warrant did not establish probable cause to search his house—it only established probable cause for his person and his cellphone; (2) the evidence was stale because it was more than six months old; and (3) the good faith doctrine does not apply.

### 1.   Does the Affidavit Establish Probable Cause to Search Vincent's House?

Vincent contends that the affidavit did not establish a nexus to his house through an IP address or home computer.

"It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will

probably be found at the premises to be searched." *United States v. Martin,* 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Hove,* 848 F.2d 137, 140 (9th Cir. 1988)). "[T]he affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (citing *United States v. Marion,* 238 F.3d 965, 969 (8th Cir. 2001)).

Here, the affidavit did establish a link between Vincent, his house, and his criminal activity. Special Agent Norman testified that Vincent sent the OCE child pornography videos and a video of him performing oral sex on his dog through Telegram. She also averred that a Facebook search indicated that the dog was Vincent's and that Vincent was the man in the video. After receiving this evidence, she issued subpoenas to obtain the address associated with Vincent's NKP account, which was his Peachtree City address. The evidence was sufficient to establish a link between Vincent's house and his criminal activity. *See, e.g., United States v. Vanbrackle,* 397 F. App'x 557, 560 (11th Cir. 2010) (per curiam) (finding that screen names linked to a defendant's home address, defendant residing at the home address, the belief that

defendant collected child pornography based on his sending and receiving child pornography, and the tendencies of child pornography collectors, was enough to establish probable cause to search defendant's home).

### 2. Is the Evidence Stale?

Next, Vincent argues that the evidence provided by the affidavit was stale. "The staleness doctrine 'requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues.'" *United States v. McBurnette*, 382 F. App'x 813, 815 (11th Cir. 2010) (per curiam) (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000)). "Probable cause of involvement in *electronic* child pornography remains even longer because deleted files can remain on electronic devices." *United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018). Thus, the analysis of staleness in child pornography cases "is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" *United States v. Miller*, 450 F. Supp. 2d 1321, 1335 (M.D.

Fla. 2006) (quoting *United States v. Irving*, 432 F.3d 401, 416 (2d Cir. 2005)).

The six months between the OCE's first contact with Vincent and the search does not trigger the staleness doctrine. *See, e.g.*, *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (images obtained three months before warrant were not considered stale); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (six-month period between the time the images were obtained and the warrant's execution did not render evidence stale); *United States v. Roby*, 27 F. App'x 779, 780 (9th Cir. 2001) (eight and one-half months between the time the images were obtained and the warrant's execution did not render the probable cause stale).

Despite this, Vincent states that the Judge Vineyard recited "an unsupported, self-serving law-enforcement" statement about child pornography users never disposing their pornography. [40] at 5. He argues that courts have not cited studies that show child pornography users keep the files, and that the premise "eviscerates the staleness doctrine." *Id.* at 6.

The Court is not making the broad assumption that all child pornography collectors keep their materials indefinitely, but that based on the nature of the crime as set forth in the affidavit, the magistrate judge could believe the evidence would be present. *See Hay*, 231 F.3d at 636.

More telling, Vincent himself also had a sixty-four-gigabyte memory card that contained at least four videos: two showing men anally raping a toddler and an infant; a video showing a young boy touching a man's genitals; and the last of a man orally raping an infant. Vincent's possession of these videos directly contradicts his assertion that child pornography users do not retain files once they've been "viewed." The Court finds that the evidence was not stale.

### 3. Good Faith Doctrine

Vincent then argues that the good faith doctrine does not apply because a reasonable officer would have seen that the affidavit did not establish a nexus between his residence and his criminal activity. "The *Leon* good faith exception requires suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have

harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). There are four exceptions when the good faith exception does not apply, one of which Vincent argues is applicable here: "[W]here the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. . . .'" *Id.*

Here, there is nothing in the record to indicate that Agent Norman was dishonest in preparing her affidavit, nor that Judge Salinas rubber-stamped the affidavit. The affidavit provided sufficient information that detailed the place to be searched as well as what the officers would search for. It was reasonable to believe that videos depicting child pornography would be found at Vincent's residence. Thus, the good faith exception does not apply.

### B.  Vincent's Motion to Dismiss Count II

Vincent argues that the R&R errs in concluding that Count II should be dismissed for three reasons: (1) the indictment fails to state

an offense; (2) as applied, § 48 is void because it is vague; and (3) the rule of lenity should apply.

### 1. Does the Indictment Fail to State an Offense Under § 48?

Vincent argues that performing oral sex on his dog is not serious bodily injury as required by § 48. He also contends that the indictment did not put him on notice that he committed an act that causes serious bodily injury to an animal, and thus, Count II should be dismissed.

"[T]he sufficiency of a criminal indictment is determined from its face." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)). "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *Id.* (quoting *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003)).

A district court is "limited to reviewing the *face* of the indictment, and, more specifically, the *language used* to charge the crimes." *Id.* (citing *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992)). "It is well-settled that 'a court may not dismiss an indictment . . . on a

13

determination of facts that should have been developed at trial.'" *Id.* (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)).

Here, the indictment charges that

> On or about August 11, 2020, in the Northern District of Georgia and elsewhere, the defendant, WILLIAM VINCENT, did knowingly sell, market, advertise, exchange, and distribute an animal crush video, that is, an obscene video of a man engaging in a sexual act with a live dog, in and using a means and facility of interstate and foreign commerce, all in violation of Title 18, United States Code, Section 48(a)(3).

[1-1] at 2. Section 48(a)(3) provides, "[I]t shall be unlawful for any person to knowingly sell, market, advertise, exchange, or distribute an animal crush video in, or using a means or facility of, interstate or foreign commerce."

The indictment tracks the language of the statute and specifies how Vincent violated it: by filming himself performing "an obscene act" on his dog (which was, as averred in the affidavit, oral sex on his dog). The allegations in the indictment are sufficient to state an offense because Count II tracks the statute's language and are enough to inform Vincent of the charge.

14

Undeterred, Vincent argues that non-forcible oral sex is a non-injurious act and that because his dog did not appear threatened, he (Vincent) did not commit an offense under § 48. His argument goes directly to the Government's burden to prove beyond a reasonable doubt that he used force on his dog or subjected it to a threat of serious bodily injury.

The Court will not consider the sufficiency of the evidence at this time and only considers the language of the indictment. *See United States v. Sharpe*, 438 F.3d at 1263 (Eleventh Circuit declining to rule on sufficiency of evidence in determining if indictment put defendant on notice that he was accused of committing mail fraud).

### 2. Is § 48 Vague as Applied to Vincent?

When a statute does not implicate a defendant's First Amendment rights, its "vagueness is determined on an 'as applied' basis." *United States v. Ferguson*, 142 F. Supp. 2d 1350, 1355 (S.D. Fla. 2000) (quoting *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 986 (7th Cir. 1999)). A court applies the vagueness doctrine "strictly to the

allegations contained in the . . . indictment." *Id.* "A criminal statute is unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Estrada*, 969 F.3d 1245, 1264 (11th Cir. 2020) (quoting *United States v. Ortega-Torres*, 174 F.3d 1199, 1200 (11th Cir. 1999)).

An ordinary person, in reading the statute, would conclude that animal crush videos include any filmed sex act on an animal because the animal cannot give enthusiastic consent. *See* Ravi Singh Chhikara & Harleen Kaur, *The Theory of Consent in Sexual Abuse on Animals,* Nat'l J. of Crim. L.  34, 39 (2020) (animals appear to consent because they have become accustomed to the sexual abuse or have been trained to accept the sexual abuse).

Even so, Vincent argues that § 48 is vague, which makes it impossible for him to know that his actions were criminal. He argues that a person does not know if a dog is consenting to non-forcible oral sex, and, that oral sex is not inflicting serious bodily injury as required under § 48.

The Court disagrees. One study indicates that while there might not be any outside trauma to an animal after any type of human-inflicted sexual assault (injurious or not), there could be (and often is) internal trauma to the animal. *See* A.W. Stern & M. Smith-Blackmore, *Veterinary Forensic Pathology of Animal Sexual Abuse,* VETERINARY PATHOLOGY 1057, 1061–62 (2016) (finding internal injuries in dogs after sexual abuse). Indeed, the only court to discuss the statute in the context of bestiality noted that the statute covers sexual abuse of animals. *United States v. Richards,* 755 F.3d 269, 272 n.6 (5th Cir. 2014).

Next, Vincent argues that the novel construction doctrine does not apply to § 48 and that the R&R incorrectly relied on *United States v. Richards,* 755 F.3d 269 (5th Cir. 2014). He points to the fact that the *Richards* court only addressed whether § 48 encompasses bestiality in a footnote, not in the opinion itself. He argues that if a judge or lawyer would not "take it to be persuasive authority, [then] why should a lay person be presumed to do otherwise." [40] at 12 (alteration added).

17

Although the *Richards* court did not explain its reasoning when stating that § 48 proscribes bestiality, the Court agrees with the *Richards* court that a reasonable reading of § 48 does proscribe bestiality.

Rather than create a standalone statute that proscribes bestiality, Congress instead incorporated the language of 18 U.S.C. §§ 2241 and 2242 into § 48 to proscribe bestiality.[7] Section 2241 prohibits a person from forcing another person to engage in sexual acts through threat of serious bodily injury. Section 2242 includes the language from § 2241, and also prohibits a person from engaging in sexual acts with another if the other person does not know what is happening, cannot communicate unwillingness, or is physically incapable of declining participation in the act. Thus, because a "reasonable interpretation" of the statute indicates that it proscribes bestiality, it is not void as applied to Vincent. *United States v. Nowka*, No. 5:11-cr-474-VEH-HGD, 2012 WL 2862061, at *3 (N.D. Ala. May 10, 2012) (citations omitted).

---

[7] Georgia has a statute that explicitly proscribes bestiality and does not incorporate language from another statute. O.C.G.A. § 16-6-6.

In pertinent part, § 48 prohibits a person from forcing an animal to engage in sexual acts by threatening the animal with serious bodily injury, if the animal did not understand what was happening, communicated unwillingness, or was physically incapable of refusing to participate. Vincent is accused of performing sex acts, including oral sex, on his dog. It is a reasonable understanding that what he did involved sexual acts upon an animal that could not refuse to participate. Because the statute's language is not impermissibly vague, the Court finds that it is valid as applied to him. *See Union Pac. R.R. Co. v. United States*, 99 U.S. 700, 718 (1878) ("Every possible presumption is in favor of the validity of a statute. . . .").

### 3. Does the Rule of Lenity Apply?

Last, Vincent argues that the rule of lenity applies because it is unclear whether his conduct with an animal violates §§ 2241 and 2242 if done to another person. "A common formulation of the rule of lenity is as follows: If a federal criminal statute is grievously ambiguous, then the statute should be interpreted in the criminal defendant's favor." *Wooden v. United States,* 142 S. Ct. 1063, 1075 (2022) (Kavanugh, J.,

concurring) (citing *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016)). The rule of lenity is not triggered if a law "merely contains some ambiguity or is difficult to decipher." *Id.* It applies only when "'after seizing everything from which aid can be derived,' the statute is still grievously ambiguous." *Id.* (citing *Ocasio*, 578 U.S. at 295 n.8).

As explained above, the statute is not difficult to decipher, nor is it grievously ambiguous. Accordingly, the rule of lenity does not apply.

## IV.  Conclusion

The Court has conducted a careful and complete review of the R&R, including a de novo review of those portions of the R&R to which Vincent objects, and finds that its factual and legal conclusions are correct. Accordingly, the Court overrules Vincent's objections [40] and adopts as its Order the R&R [36]. Vincent's motions to suppress [21] and to dismiss Count II [22] are denied.

IT IS SO ORDERED this 6th day of July, 2022.

_____
Timothy C. Batten, Sr.
Chief United States District Judge